```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
PETER ALTMAN,                                               :
                                                            :
                                      Plaintiff,            :
                                                            :         MEMORANDUM & ORDER
                -against-                                   :
                                                            :         1:18-cv-03411 (ENV) (RLM)
STARBUCKS CORPORATION,                                      :
                                                            :
                                      Defendant.            :
----------------------------------------------------------- x
```

VITALIANO, D.J.

Plaintiff Peter Allman[1] brought a negligence claim against defendant Starbucks in Queens County Supreme Court on November 10, 2017, seeking to recover damages for injuries sustained when he slipped and fell in a puddle in a coffeeshop bathroom. *See* Compl., ECF Dkt. 1-2, at 4. On June 12, 2018, the case was removed to this district. *See* Notice of Removal, ECF Dkt. 1. Nearly three years later, on April 12, 2021, Starbucks moved for summary judgment and, as a precursor, for the testimony and report of plaintiff's "liability expert" to be precluded as inadmissible under Federal Rule of Evidence 702 ("Rule 702"). *See* Mot., ECF Dkt. 44. For the reasons that follow, both motions are granted.

## Background[2]

On August 21, 2017, at around 5:45 p.m., plaintiff visited a Starbucks coffeeshop at 51-06 Northern Boulevard in Queens, New York, where he was a regular customer. Allman Dep., ECF Dkt. 44-8, at 14–15, 58. He purchased a bottle of Perrier and sat on a stool, drinking his

---

[1] The original complaint misspelled plaintiff's surname as "Altman."
[2] The relevant facts are drawn from the pleadings, the Local Rule 56.1 filings of the parties and evidentiary submissions. Citations to a deposition reference the internal document's pagination rather than the court's electronic filing system.

water. *Id.* at 18. The store was crowded that evening, and as plaintiff sat, he did not take notice of anyone walking in or out of the single-occupancy bathroom at the back of the store. *Id.* at 25–29.

Eight to ten minutes after sitting down, plaintiff, to the best of his recollection, threw his bottle in the garbage. *Id.* at 25–27. He then walked to the bathroom; opened the door, prompting the light to turn on; locked the door behind him; and took a step away from the door with his right foot. *Id.* at 28–30. Plaintiff testified that he then swiftly slipped on one foot in a puddle of water, landing on his back, saturating his clothes, and bowling over in pain on his left side. *Id.* at 30, 36–38, 40, 49.

It was then, Allman says, that he first noticed "flooding . . . all the way around the left side" of the bathroom, where the toilet was. *Id.* at 41. (Later, in his testimony, he was unable to recall whether he had been looking at his phone when he had entered the bathroom, but then decided that the phone had been in his pocket. *See id.* at 43–45.) The water, he said, appeared to be moving, as if it had "seep[ed] through" some point of entry around the toilet or on the left wall. *Id.* at 42.

Struggling, he said, Allman eventually got to his knees, unlocked and opened the door, and solicited the help of store employees, who ran to help him. *Id.* at 49. Jenny Leung, a manager, directed him onto a chair, gave him an ice pack, and apologized. *Id.* at 51. (Later, plaintiff was uncertain as to whether Leung or a male employee had helped him onto the chair. *Id.* at 68.) "[T]here must have been a backup in the toilet," she explained. *Id.* at 50, 55. Staff proceeded to mop up the spill and to close the bathroom with caution tape. *Id.* at 56–58. Someone called plaintiff an ambulance. *Id.* at 53.

Leak or not, plaintiff was apparently well aware of the bathroom's heavy use. To that

2

point, he testified that he had observed over the previous decade that homeless people would regularly use the same Starbucks bathroom to wash up. *Id.* at 58. Though he had never noticed water on the floor of the bathroom, he had sometimes come across "debris" such as shampoo bottles and razors around the sink and wet toilet paper on the floor. *Id.* at 59–60. The store keeps its bathroom unlocked and does not require that visitors make a purchase to use it. Villanueva Dep., ECF Dkt. 44-9, at 15, 19.

Allman's eyes were not the only ones to make observation of bathroom conditions that day. Pursuant to a pair of task-rotational systems that Starbucks used to divide staff responsibilities to keep the store in working order, barista Sayeed Akbar had cleaned, and customer-support supervisor Nataly Villanueva had inspected, the bathroom between a half-hour and an hour before plaintiff's use of it. *Id.* at 47–48, 61; Leung Dep, ECF Dkt. 44-10, at 18–20, 24–27. Separate and apart from that check, Akbar had entered the bathroom once more, about ten minutes before plaintiff used it, to conduct a brief inspection. Akbar Dep., ECF Dkt. 44-11, at 24–25. In both instances, the bathroom was dry, clean, and "ready for customer use." *Id.* at 25; Villanueva Dep. at 47. Akbar, meanwhile, had noticed no homeless people in the store. Akbar Dep. at 39.

When Akbar and Villanueva checked the bathroom *after* plaintiff's exit, they saw a puddle either near the sink or between the sink and toilet. *Id.* at 29; Villanueva Dep. at 45. It was four to five inches in width and not actively spilling from any location. Akbar Dep. at 31; Villanueva Dep. at 45–46. To be sure, corporate "incident reports" by Akbar and Leung later contained language that was somewhat more inflammatory: Akbar commented that it "was strange that the entire floor was wet" so soon after he had visited the bathroom, and Leung, who had not been in the store when plaintiff fell, wrote that plaintiff had slipped "due to flood." *See*

3

Incident Report, ECF Dkt. 44-13; Leung Dep. at 30.  But Akbar and Villanueva agreed that there was no evidence of a leak.  Akbar Dep. at 31; Villanueva Dep. at 45–46.

Following his slip and fall, plaintiff was eventually diagnosed with various injuries to the spine and hip, among them spinal stenosis and a bulging disc, and confined to a bed for five months when not working or attending medical appointments.  ECF Dkt. 1-4 at 5–8.

## Standard of Review

A district court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  A court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact but merely to "determine whether there *are* issues of fact to be tried."  *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)).  The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the motion court will resolve all ambiguities and draw all permissible factual inferences in favor of the party opposing the motion, *see Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party.  *See George v. Reisdorf Bros., Inc.*, 410 Fed. App'x 382, 384 (2d Cir. 2011).  The nonmoving party may not rely solely on

4

"conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Instead, the nonmoving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case . . . [s]ince a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23. If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (internal citations omitted).

In this case, evaluation of defendant's motion for summary judgment is hogtied to a determination of whether certain expert proof plaintiff seeks to advance to defeat summary judgment is admissible. It begins with Federal Rule of Evidence 702, which permits a "witness who is qualified as an expert" to "testify in the form of an opinion or otherwise if" (a) the expert's "scientific, technical, or other specialized knowledge" will help the jury "to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In this respect, Rule 702 obligates a district court to act as a gatekeeper, ensuring that all expert testimony and evidence is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993). To fulfill its gatekeeping function, a district court must undertake "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93. The

5

inquiry is "a flexible one," *id.* at 594, designed to ensure that an expert's testimony both "rests on a reliable foundation and is relevant to the task at hand," *id.* at 597.

In addition to the requirements of Rule 702, "expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 403). The party seeking to admit the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Hollman v. Taser Int'l, Inc.*, 928 F. Supp. 2d 657, 666 (E.D.N.Y. 2013) (citing *Daubert*, 509 U.S. at 592 n.10).

## Discussion

Plaintiff's Expert Witness

Courts may resolve evidentiary determinations, such as motions to strike expert testimony, at the summary judgment stage. *Bah v. Nordson Corp.*, No. 00-CIV-9060 (DAB), 2005 WL 1813023, at *6 (S.D.N.Y. Aug. 1, 2005) (citing *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997)). Indeed, since the resolution of a summary judgment motion must be granted on admissible evidence, prerequisite to its decision on such motions, the summary judgment court must resolve any evidentiary challenges to proffered evidence the Court finds material to the issues in dispute. *Houser v. Norfolk Southern Railway Co.,* 264 F. Supp. 3d 470, 475 (W.D.N.Y. 2017) (quoting *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 180 (E.D.N.Y. 2001)). In this case, defendant seeks to preclude plaintiff's expert, Joseph A. Pollini, from testifying as a "liability expert."

As the proponent of the expert proof he asks the court to consider on Starbucks's summary judgment motion, Allman has the burden to establish its admissibility. *Hollman,* 928

F. Supp. 2d at 666 (citing *Daubert*, 509 U.S. at 592 n.10).  Regardless of any other snare that might befall its admission, defendant makes plain that its attack is a front assault grounded in Rule 702.  Def. Mem., EFC Dkt. 44-2, at 17.  Yet, Allman expends only two paragraphs in support of admissibility.  He argues only that Pollini's expert materials did not subject defendants to undue surprise and therefore are not subject to exclusion under—curiously enough—Federal Rule of Civil Procedure 37(C)(1).  Pl. Mem., ECF Dkt. 45-9, at 25.  Of course, defendants are not seeking exclusion under that rule but rather under Federal Rule of Evidence 702.  Plaintiff makes no other attempt to defend Pollini's credentials and thus utterly fails to meet the challenge of defendant and satisfy his burden under Rule 702 and *Daubert*.

Though this alone would suffice to preclude Pollini's testimony, he would not, in any event, qualify as an expert on the subject of his proposed testimony—retail safety procedures. *See* Pl. Expert Witness Disclosure, ECF Dkt. 45-2, at 8–13.  Pollini is certainly a qualified and decorated veteran of the New York Police Department (NYPD); he earned degrees in criminal justice and police science, served in numerous capacities of NYPD for 33 years, has taught political science and criminal justice courses at John Jay College for 24 years, and currently serves as president of an investigative and security consulting company.  Pl. Expert Witness Disclosure at 6–7, 14.  But plaintiff makes not the faintest suggestion for how Pollini's knowledge, skill, experience, training, or education provides Pollini with any familiarity, "let alone expertise, in safety in the retail environment." *Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 459 (E.D.N.Y. 2007).  Indeed, it appears that in every single instance in which Pollini has testified as an expert witness, he was qualified as a police procedures expert.  *See* Pl. Expert Witness Disclosure at 7.  The Court finds that Pollini's proffered expert opinion is wholly outside of his qualifications, and therefore his testimony is inadmissible under Rule 702.

Summary Judgment

Under New York law, "[t]o establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom . . . ." *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 1294, 499 N.Y.S.2d 392, 392 (1985). Specifically, in a negligence action concerning a slip and fall, "the plaintiff must demonstrate that the defendants 'created the condition which caused the accident, or that the defendant[s] had actual or constructive notice of the condition.'" *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330 (E.D.N.Y. 1998) (alteration in original) (quoting *Bykofsky v. Waldbaum's Supermarkets, Inc.*, 210 A.D.2d 280, 619 N.Y.S.2d 760, 761 (2d Dep't 1994)). To fend off liability, the defendant need only "point[] to an absence of evidence to support an essential element of the nonmoving party's claim." *Shimunov v. Home Depot U.S.A., Inc.*, No. 11-CV-5136 (KAM), 2014 WL 1311561, at *3 (E.D.N.Y. Mar. 28, 2014) (quotations omitted).

There appears to be no dispute that this is a "notice" case rather than a "creation" case; neither plaintiff's briefing nor the deposition testimony suggests that the so-called "flood" in defendant's bathroom was produced by a Starbucks employee. *See Quarles*, 997 F. Supp. at 330 ("The mere fact that the hotel supplied the coffee . . . does not establish the creation of the puddle, because[] the puddle is not a direct consequence of the defendant's passive activity of providing guests with coffee."). Rather, plaintiff's case depends on either of two theories of notice: (1) that defendant had actual or constructive notice of the particular spillage that felled plaintiff and it failed to "remedy the defect," *Maguire v. Southland Corp.*, 245 A.D.2d 347, 348, 665 N.Y.S.2d 680 (2d Dep't 1997), by cleaning it up; or (2) that defendant had actual notice of recurring water spillage significant enough to cause risk of slippage. *See* Villanueva Dep. at 15,

8

19. The implication, of course, is that making customers pay for the privilege of bathroom access would keep those without enough money out of the bathroom and water off its floors.

But plaintiff has failed to make either showing. As to the August 21, 2017, flood, the evidence supports neither constructive nor actual notice on the part of Starbucks employees. Because plaintiff was inside the store for ten minutes at most, Allman Dep. at 25–27, and even then could not be sure whether anyone had used the bathroom during his visit, *id.* at 25–27, 28–29, his version of events provides no clue as to the source of the water that accumulated on the floor or when it occurred. *See Gordon v. Am. Museum Nat. Hist.*, 67 N.Y.2d 836, 838, 492 N.E.2d 774, 501 N.Y.S.2d 646 (1986) ("[T]he piece of paper that caused plaintiff's fall could have been deposited there only minutes or seconds before the accident and any other conclusion would be pure speculation."). Meanwhile, the employees' testimony indicates that the spill had lingered for no more than ten minutes—certainly not long enough to have been caught during a routine inspection, and not nearly long enough to confer constructive notice. Villanueva Dep. at 47–48, 61; Leung Dep. at 18–20, 24–27; Akbar Dep. at 24–25; *see Kane v. Human Servs. Ctr., Inc.*, 186 A.D.2d 539, 540, 588 N.Y.S.2d 361 (2d Dep't 1992) ("The mere existence of the puddle on the floor is insufficient to impute notice to the defendant, and there is no evidence that the liquid was present on the hallway floor for such a period of time as to give rise to constructive notice." (citations omitted)); *Graziano v. Target Corp.*, No. 17-CV-3927 (SJF) (AKT), 2019 WL 1958019, at *8 (E.D.N.Y. May 2, 2019) (finding a ten-to-fifteen minute window between an employee's inspection and the plaintiff's injury to be "insufficient to find that a defendant had constructive notice of the dangerous condition" (quotations and citations omitted)).

Presumably cognizant of the potential for checkmate on the facts, plaintiff relies

9

primarily on a "recurrent dangerous condition" theory, consistent with the view of at least two New York appellate courts that a dangerous condition, observed on prior occasions separate and apart from the relevant injury, can form the basis of a negligence claim.[3]  When, for example, "a landowner has actual knowledge of the tendency of a particular dangerous condition to re[]cur, he is charged with constructive notice of each specific re[]currence of that condition." *Weisenthal v. Pickman*, 153 A.D.2d 849, 851, 545 N.Y.S.2d 369 (2d Dep't 1989) (citations omitted).  This, no doubt, is the gravamen of plaintiff's lament that defendant's bathroom is publicly accessible.  Without reaching the issue of whether New York law or public policy would permit such conduct, plaintiff essentially argues that Starbucks should be charged with notice that homeless persons wash up in the restroom and that its negligence took the form of failing to restrict access to their public bathroom to prevent nonpaying homeless patrons from using it and, thereby, preventing their water spills.  *See* Leung Dep. at 29–30 (noting that occasional floor wetness was alternately caused by "urine," by "customers washing their hands and . . . flick[]ing," or by "homeless people splash[ing] on their face").

This argument is too slick for plaintiff's own good, and it papers over several omissions in the relevant testimony.  While Leung, Villanueva, and others acknowledged that (1) the bathroom floor would occasionally be wet and (2) homeless people would occasionally use the bathroom, their omissions still leave open a commodious gap in plaintiff's evidence.  Because employees were asked generally about when they saw "water on the ground," *id.* at 29, rather

---

[3] As the Southern District has pointed out, the New York Court of Appeals has suggested that a dangerous condition's recurrence is relevant only to causation, and not to constructive notice. *See Rivera v. Nat'l R.R. Passenger Corp.*, No. 09 Civ 5201 (KMW), 1994 WL 512421, at *3 (S.D.N.Y. Sept. 19, 1994) (evidence of a recurring condition did not cure the "defect in plaintiff's case" of "the lack of evidence establishing constructive notice of the particular condition that caused [plaintiff's] fall" (quoting *Gordon*, 67 N.Y.2d at 838)).

than water that was significant in quantity or dangerousness, their answers gave no sense of the frequency of water conditions like the one plaintiff encountered, which he described as rippling "flooding . . . all the way around the left side" of the bathroom.  Allman Dep. at 41; *see Goodman v. United States*, 916 F. Supp. 362, 366 (S.D.N.Y. 1996) (granting summary judgment to defendant because testimony of recurrent condition was too vague).  Because no employee testified that the water they had observed, dangerous or otherwise, was left more often by homeless visitors than by other patrons, there is no reason to infer that homeless customers posed a particular risk to bathroom safety—or, even further, that limiting access to paying customers would have been a rational remedy.  Even plaintiff, for his part, testified not to a pattern of water spillage owing to homeless patrons but rather to shampoo bottles and razors around the sink and wet toilet paper on the floor.  Allman Dep. at 59–60; *compare Colt v. Great At'l & Pac. Tea Co., Inc.*, 209 A.D.2d 294, 294–95, 618 N.Y.S.2d 721 (1st Dep't 1994) (summary judgment denied where plaintiff testified that, as a frequent shopper at defendant's market, she routinely encountered the same vegetable debris and food scraps on which she would eventually slip).  Thus, even crediting plaintiff's hypothesis that homeless people were regularly washing up at his Starbucks on Northern Boulevard, there is no evidence of regular occurrences of the "particular dangerous condition" that Allman himself described as the condition that caused his slip and fall, *Weisenthal*, 153 A.D.2d at 851, and absent such evidence, a recurrent condition argument fails.

Finally, even accepting for the sake of argument that Allman's lament about homeless people splashing water on the bathroom floor in utilizing the sink qualified as a recurring condition causing his slip and fall, given the employees' testimony about the task-rotational systems used to keep their store in working order, Starbucks has clearly implemented institutional measures to remedy such conditions.  *See also* Villanueva Dep. at 23 ("So let's say

11

that they created a mess, like a lot of water on the floor or something like that[.] . . . [T]hey would get the wet floor sign, get the mop, a bucket, lock the door and just start cleaning.") The testimony about the afternoon's events was emblematic of that: Between a half-hour and an hour before plaintiff's attempt to use the bathroom, Akbar had cleaned it, and Villanueva had inspected it; and roughly ten minutes before plaintiff's arrival, Akbar had inspected it again. No homeless people, meanwhile, had been spotted in the store that afternoon—not by Akbar, and not by plaintiff. Akbar Dep. at 39; Allman Dep. at 25–29; *see O'Connor-Miele v. Barhite & Holzinger, Inc.*, 234 A.D.2d 106, 106–07, 650 N.Y.S.2d 717 (1st Dep't 1996) (holding the "significant . . . burden" of showing constructive notice satisfied by "evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was *routinely left unaddressed* by the landlord") (emphasis added).

Without evidence upon which a jury could reasonably conclude that defendant created the dangerous condition or had actual or constructive knowledge of the dangerous condition, plaintiff's claim must meet the same fate as the bathroom slip-and-fall plaintiff in *MacKinney v. Burger King Corp.*, No. 05-CV-188 (DRH) (AKT), 2006 WL 3501142 (E.D.N.Y. Dec. 4, 2006), another negligence case applying New York law. There, the testimony of two fast-food store managers established that the bathroom had been clean five minutes before plaintiff's use of it, whereas plaintiff's own testimony recounted the strong odor of urine and an eventual slip and fall in a wet puddle. *Id.* at \*1. "Under these circumstances, it was incumbent upon plaintiff to produce evidence raising a question as to the Defendant's constructive notice. He has not done so and summary judgment is proper for the Defendant." *Id.* at \*2 (citing *Cantalupo v. John Anthony's Water Café, Inc.*, 281 A.D.2d 382, 382, 721 N.Y.S.2d 397 (2d Dep't 2001)). Simply put, there is no evidence whatsoever that a puddle of the type Allman claims caused his fall was

even seen by anyone, much less that it was a recurring condition unattended by Starbucks. Therefore, summary judgment for Starbucks is equally warranted here.

## Conclusion

For the foregoing reasons, defendant's motion to preclude the expert proof proffered by plaintiff is granted, as is its motion for summary judgment.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
       May 18, 2023

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge